**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 20-cv-01943-NYW-GPG

HIGH COUNTRY KOMBUCHA, INC., d/b/a ROCKY MOUNTAIN CULTURES,

 Plaintiff,

v.

NAUTILUS INSURANCE COMPANY, and
OHIO SECURITY INSURANCE COMPANY,

 Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on three pending Motions:

(1)     Defendant Nautilus Insurance Company's Motion for Summary Judgment (the "Nautilus Motion for Summary Judgment") [Doc. 40];

(2)     Plaintiff's Motion for Summary Judgment Re Duty to Defend (the "High Country Motion for Summary Judgment") [Doc. 44]; and

(3)     Defendant Ohio Security Insurance Company's Motion for Summary Judgment (the "Ohio Security Motion for Summary Judgment") [Doc. 48].[1]

Upon review of the Motions and the associated briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of these matters.  For the reasons set forth herein, the Nautilus Motion for Summary Judgment and the Ohio Security Motion for Summary Judgment are **GRANTED** and the High Country Motion for Summary Judgment is **DENIED**.

---

[1] This case was reassigned to the undersigned on August 4, 2022.  *See* [Doc. 90].

## BACKGROUND

The below material facts are drawn from the Parties' final Statements of Undisputed Material Facts [Doc. 58; Doc. 65; Doc. 69; Doc. 71] and the record before the Court and are undisputed unless otherwise noted.[2]  Plaintiff High Country Kombucha, Inc. ("Plaintiff" or "High Country") produces kombucha tea for third parties, including Albertson's LLC, New Albertson's, Inc., and Safeway, Inc. (collectively, "Albertson's"), and Aboire Beverage Company, LLC ("Aboire").  [Doc. 65 at ¶ 4; Doc. 71 at ¶ 4; Doc. 30 at 8].

Defendant Nautilus Insurance Company ("Nautilus") issued an insurance policy to High Country for the period of April 25, 2019 through April 25, 2020 (the "Nautilus Policy").  [Doc. 65 at ¶ 1; Doc. 45-1].  The Nautilus Policy was a renewal of, and identical to, an insurance policy for the period of April 25, 2018 through April 25, 2019.  [Doc. 65-1 at ¶ 1].  Similarly, Defendant Ohio Security Insurance Company ("Ohio Security") issued an insurance policy to High Country for the period of February 27, 2019 through February 27, 2020 (the "Ohio Security Policy").  [Doc. 71 at ¶ 2; Doc. 45-2].  Both Policies provided that each respective insurer would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  [Doc. 45-1 at 10; Doc. 45-2 at 47].

The Policies contain identical definitions for "bodily injury," defining the term as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  [Doc. 45-1 at 22; Doc. 45-2 at 60].  Similarly, "property damage" is defined in each Policy as

---

[2] On many occasions, the Parties have submitted duplicate exhibits.  In these instances, for purposes of clarity, the Court cites to the exhibit attached to the High Country Motion for Summary Judgment, even when discussing the other Parties' Motions for Summary Judgment.  In other instances, the Court cites to the exhibits attached to the earliest-filed Motion for Summary Judgment.

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[Doc. 45-1 at 24; Doc. 45-2 at 62-63].

On March 26, 2019, counsel for an individual named Gary Freedline issued a notice and demand for corrective action to Albertson's.[3]  [Doc. 58 at ¶ 5; Doc. 41-3].  Mr. Freedline's counsel alleged that a brand of kombucha sold at Albertson's—O Organics—was mislabeled in that it "contain[ed] significantly more alcohol than the .5 percent alcohol-by-volume threshold permitted for non-alcoholic beverages by federal and state law."  [Doc. 41-3 at 1].  The letter demanded that Albertson's (1) "cease and desist from continuing to mislabel O Organics kombucha beverages"; (2) "issue an immediate recall on any O Organics kombucha products bearing misbranded labels"; and (3) "make full restitution to all purchasers of O Organics kombucha of all purchase money obtained from sales thereof."  [*Id.* at 2].

Then, on April 10, 2019, Mr. Freedline filed a class action complaint against O Organics LLC and Lucerne Foods, Inc. in the United States District Court for the Northern District of California (the "*Freedline* complaint").  *See* [Doc. 45-3].[4]  The *Freedline* complaint alleged, *inter alia*, that kombucha manufactured or distributed by these companies contained higher levels of alcohol and sugar than represented on the label, [*id.* at ¶¶ 19-20], and raised claims of unfair competition, false advertising, breach of warranty, negligent misrepresentation, fraud, and unjust

---

[3] It is undisputed that "Albertson['s] qualifies as an additional insured" under the Nautilus Policy, [Doc. 65 at ¶ 10], and "is an additional insured" under the Ohio Security Policy.  [Doc. 71 at ¶ 11].

[4] The Parties state that it is undisputed that "O Organics LLC and Lucerne Foods, Inc. are Albertson's companies."  [Doc. 65 at ¶ 6; Doc. 71 at ¶ 6].  In support, Plaintiff cites to paragraph 14 of the *Freedline* complaint, which states that "O Organics Kombucha is now sold nationwide in Safeway and Albertson's family of retail stores."  [Doc. 45-3 at ¶ 14].

enrichment.  [*Id.* at 13-24].  On May 7, 2019, counsel for Albertson's requested that High Country defend against the claims asserted in the *Freedline* complaint.  [Doc. 58 at ¶ 22; Doc. 41-5].  At some point thereafter, both Nautilus and Ohio Security informed High Country that coverage for the *Freedline* matter was not available under the applicable insurance Policies.  [Doc. 58 at ¶ 39; Doc. 41-10 at 1; Doc. 49-9 at 1; Doc. 69 at ¶ 42].[5]

Meanwhile, on March 21, 2019 and April 9, 2019, counsel for individuals named Andrea Bach and Ardeshir Farshchi issued notices and demands for corrective action to Trader Joe's Company and Trader Joe's East Inc.  [Doc. 58 at ¶ 24; Doc. 41-6].  The Bach-Farshchi demand alleged that kombucha beverages sold by Trader Joe's "contain[ed] significantly more alcohol than the .5 percent alcohol-by-volume threshold permitted for non-alcoholic beverages by federal and state law."  [Doc. 41-6 at 1, 3].  On April 18, 2019, Trader Joe's notified Aboire of the Bach-Farshchi demand and requested that Aboire "indemnify, defend, and hold Trader Joe's harmless against any and all claims arising from or related to the claims asserted in the corrective action demand."  [Doc. 58 at ¶¶ 34-35; Doc. 41-7 at 2].[6]  On June 19, 2019, National Claims Management, on behalf of Aboire, notified High Country of the Bach-Farshchi demand and informed High Country that it would "look to [High Country]" to defend and indemnify Aboire in the event of a future claim.[7]  [Doc. 41-8; Doc. 58 at ¶ 37].  Nautilus and Ohio Security informed High Country

---

[5] It is undisputed that High Country notified Nautilus of the *Freedline* lawsuit, [Doc. 58 at ¶ 38; Doc. 41-9], but Plaintiff disputes that this notification letter was a tender of the *Freedline* lawsuit. [Doc. 58 at ¶ 38].  Neither High Country nor Ohio Security explain how or when Ohio Security was notified of the *Freedline* lawsuit.

[6] For purposes of factual background, the letter sent to Aboire by Trader Joe's references a "Master Vendor Agreement" which Trader Joe's represents "states that Aboire shall, to the fullest extent permitted by law, indemnify, defend and hold Trader Joe's harmless from any claim arising out of or relating to Trader Joe's resale of the goods sold to it by Aboire."  [Doc. 41-7 at 1].

[7] The exact nature of High Country and Aboire's business relationship with each other and/or indemnity obligations is unclear but is nevertheless not material to the Court's analysis here.  For purposes of background, it is undisputed that "High Country manufactured kombucha for Aboire

that they would not be providing coverage for defense or indemnity with respect to the Bach-Farshchi demand.  [Doc. 58 at ¶ 39; Doc. 41-10 at 1; Doc. 69 at ¶ 43; Doc. 49-10 at 1].[8]

High Country initiated this civil action on May 26, 2020 in the District Court for Eagle County, Colorado, [Doc. 7], and the case was removed to federal court on July 2, 2020.  [Doc. 1]. High Country filed an Amended Complaint and Jury Demand on September 4, 2020, raising the following claims for relief:  (1) a breach of contract claim against Nautilus; (2) a breach of contract claim against Ohio Security; (3) a declaratory judgment claim seeking a declaration that the Policies "provide coverage for any amounts that must be paid to the plaintiff and/or the class members in the [*Freedline*] lawsuit"; and (4) a declaratory judgment claim seeking a declaration that the Policies "provide coverage for any amounts that High Country is determined to be obligated to pay to Aboire pursuant to the Co-Packing Agreement because of the Bach-Farshchi claims."  [Doc. 34 at 5-11].

Shortly thereafter, each Party filed a Motion for Summary Judgment.  [Doc. 40; Doc. 44; Doc. 48].  Nautilus and Ohio Security seek judgment in their favor on each of High Country's claims against them, arguing that there is no coverage under the Policies with respect to either the *Freedline* lawsuit of the Bach-Farshchi demand, and thus, neither insurer has a duty to defend or indemnify High Country with respect to these claims or allegations.  [Doc. 40 at 18; Doc. 48 at 20].  On the other hand, in its Motion for Summary Judgment, High Country does not expressly seek summary judgment in its favor on any of its claims.  *See generally* [Doc. 44].  Rather, it

---

. . . pursuant to [a 'Co-Packing Agreement']" and that "[p]ursuant to the Co-Packing Agreement, High Country agreed to produce kombucha for Aboire using Aboire recipes" and that "[u]nder the Co-Packing Agreement, Aboire was responsible for the design and content of the labels on the kombucha."  [Doc. 69 at ¶ 12; Doc. 49-3 at 1-2].

[8] It is undisputed that High Country notified Nautilus of the Bach-Farshchi demand.  [Doc. 58 at ¶ 38; Doc. 41-9]. Neither High Country nor Ohio Security explain how or when Ohio Security was notified of the Bach-Farshchi demand.

asserts that it "is entitled to judgment pursuant to [Rule 56] that Nautilus and Ohio Security were obligated to defend the Freedline Lawsuit."  [*Id.* at 20].[9]

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit."  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the nonmovant's evidence, the Court cannot and does not weigh the

---

[9] In other words, Plaintiff does not seek summary judgment with respect to, or raise arguments concerning, the Bach-Farshchi demand.  The Court addresses this strategic decision in more detail in Section I.A below.

evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (quotation omitted).

## ANALYSIS

### I.   Preliminary Issues

Before turning to the Parties' more substantive arguments, the Court finds it appropriate to address certain preliminary issues raised in the Parties' Motions and related briefing.

### A.   Ripeness of Claim Four

Both Nautilus and Ohio Security move for summary judgment on Claim Four, wherein High Country seeks a declaratory judgment that the insurance Policies "provide coverage for any amounts that High Country is determined to be obligated to pay to Aboire pursuant to the Co-Packing Agreement because of the Bach-Farshchi claims." [Doc. 34 at ¶ 48]; *see also* [Doc. 40 at 1; Doc. 48 at 1]. In response to both Motions for Summary Judgment, High Country asserts that the Bach-Farshchi claims "were settled prior to any litigation between Bach-Farshchi and Trader Joe's, and High Country has denied that its contract with Aboire requires it to satisfy Aboire's demand for reimbursement of attorney's fees and costs. Consequently, that matter is not ripe for adjudication at this time." [Doc. 50 at 20; Doc. 61 at 20]. However, despite its argument that its own Claim Four is not justiciable, *see Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807 (2003), High Country has not attempted to voluntarily dismiss Claim Four under Rule 41 of the Federal Rules of Civil Procedure, and may not now unilaterally do so given the filing of a motion for summary judgment. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). Nautilus and Ohio Security maintain that Claim Four is ripe for review. [Doc. 57 at 9-10; Doc. 68 at 11].

Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). To that end, this Court has subject matter jurisdiction only over claims that are ripe for review. *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). A controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). "The ripeness doctrine aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (quotation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). In the declaratory judgment context, the Supreme Court has stated that the relevant question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A federal court has an independent obligation to determine whether subject matter jurisdiction exists. *See 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

The Parties cite no authority—and through its independent research, this Court could locate no federal case law—in which a plaintiff argued that its own claims were not ripe, yet seemingly intended for those unripe claims to remain in the action. Indeed, "[t]he plaintiff bears the burden of providing evidence to establish that the issues are ripe." *Wilderness Watch v. Ferebee*, 445 F. Supp. 3d 1313, 1324 (D. Colo. 2020) (citing *Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.*,

259 F.3d 1244, 1249 (10th Cir. 2001)).   The Court can ascertain no reason why a claim, if determined to be unripe, would be permitted to proceed through the course of litigation, given that the Court lacks jurisdiction over unripe claims.   *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1135 (10th Cir. 2004).

In its Amended Complaint, High Country asserts the following allegations:

15.   Andrea Bach and Ardeshir Farshchi alleged in letters dated March 21 and April 9, 2019 that they purchased kombucha beverages from Trader Joe's stores.   They demanded that Trader Joe's take corrective action on the ground that the drinks contained high levels of alcohol not reflected on the labels.   Trader Joe's settled the claims by Bach and Farshchi for a certain sum which, when added to the attorney's fees incurred, exceeded $325,000.

16.   According to Trader Joe's, the kombucha at issue was purchased from Aboire. Therefore, Trader Joe's demanded reimbursement from Aboire pursuant to their Master Vendor Agreement.   Aboire, in turn, demanded reimbursement from High Country.

. . .

46.   High Country tendered the demand made by Aboire for indemnification in connection with the Bach-Farshchi claims to Nautilus and Ohio Security.   Nautilus and Ohio Security responded by denying that the Nautilus Policies and the Ohio Security Policy provide coverage for those claims.   High Country contends that Nautilus and Ohio Security are incorrect.   Therefore, an actual controversy exists over the coverage provided by the Nautilus and Ohio Security insurance contracts for the amounts incurred to defend against and settle the Bach-Farshchi claims, for which Aboire indemnified Trader Joe's and for which Aboire in turn demanded indemnification from High Country.

47.   High Country has advised Aboire of its position that the indemnification provision in the Co-Packing Agreement is not triggered by the Bach-Farshchi claims and has not paid any amounts in satisfaction of Aboire's demand for reimbursement.   Accordingly, the dispute between High Country and Aboire remains pending.

48.   High Country is entitled to a determination pursuant to C.R.S. §13-51-101 et seq. that one or more Nautilus Policy and the Ohio Security Policy provide coverage for any amounts that High Country is determined to be obligated to pay to Aboire pursuant to the Co-Packing Agreement because of the Bach-Farshchi claims.

[Doc. 34 at ¶¶ 15-16, 46-48].  Thus, while High Country asserts that Claim Four is not ripe because the "[Bach-Farshchi] claims were settled prior to any litigation" and because "High Country has denied that its contract with Aboire requires it to satisfy Aboire's demand for reimbursement of attorneys' fees and costs," [Doc. 50 at 20], this appears to have been the status of the matter at the time High Country filed its Amended Complaint.  High Country has not explained why it asserted this issue not justiciable, or what, if anything, has changed since it asserted Claim Four that renders Claim Four now unripe.  *See generally* [Doc. 50; Doc. 61].  The issue of whether High Country owes Aboire under their respective contract is not at issue in, and cannot be resolved by, this action. Instead, this Court is focused on the contractual obligations between High County and Nautilus and/or Ohio Security, arising from High Country's tender of the demand made by Aboire to Nautilus and Ohio Security, which each responded by denying coverage for those claims.  [Doc. 34 at ¶ 46].

The operative allegations demonstrate that there is a pending demand for reimbursement of attorney's fees from Aboire to High Country, [Doc. 34 at ¶ 46], and High Country has not amended its Amended Complaint or otherwise informed the Court that the underlying facts or the status of Claim Four has changed.  Accordingly, the Court agrees with High Country's assertion in its Amended Complaint that "an actual controversy exists over the coverage provided by the Nautilus and Ohio Security insurance contracts for the amounts incurred to defend against and settle the Bach-Farshchi claims, for which Aboire indemnified Trader Joe's and for which Aboire in turn demanded indemnification from High Country," and "the dispute between High Country and Aboire remains pending."  [*Id.* at ¶¶ 46-47].  As a result, the Court declines to rule that Claim Four is not ripe.

**B.      Plaintiff's Standing**

In its Response to the High Country Motion for Summary Judgment, Ohio argues that High

Country "lacks standing to seek a declaration that Ohio Security is obligated to provide Albertson's

with a defense in the Freedline lawsuit."  [Doc. 59 at 2 (emphasis omitted)].  Ohio Security asserts

that, in its view, the High Country Motion for Summary Judgment "seeks a declaration that Ohio

Security has a duty to defend ***Albertson's***, a non-party that has not tendered its defense of the

Freedline lawsuit to Ohio Security."  [*Id.* at 4 (emphasis in original)].  Accordingly, Ohio Security

asserts that High Country does not have standing to seek a defense from Ohio Security on

Albertson's behalf.  [*Id.*].  This argument was not raised in the Ohio Security Motion for Summary

Judgment or in Ohio Security's Answer.  *See* [Doc. 39; Doc. 48].

The court respectfully disagrees with Ohio Security's characterization of the High Country

Motion for Summary Judgment.  Rule 56 permits a party to move for summary judgment on a

"claim" or "defense."  Fed. R. Civ. P. 56(a).  High Country's Claim Three seeks a declaration that

the Policies "provide coverage for any amounts that must be paid to the plaintiff and/or the class

members in the [*Freedline*] lawsuit to the extent that those parties claim that they sustained bodily

injury from consuming the kombucha."  [Doc. 34 at ¶ 42].  Stated another way, the Court construes

Claim Three as High Country seeking reimbursement for any claims that *it* is deemed obligated to

pay to the *Freedline* plaintiffs, as opposed to a declaration that Ohio Security must directly assume

a defense of Albertson's.  *See* [*id.*]; *see also* [*id.* at ¶ 14 (alleging that High Country has "satisfied

all of its indemnification obligations to Albertson['s] . . ., including payment for the defense of

Albertson['s] in the [Freedline] action.")].

Indeed, High Country's Motion for Summary Judgment asserts that because the insurers

denied coverage, "High Country has paid the costs of defending Albertson's in the Freedline action

out of its own pocket since that time," [Doc. 44 at 2], and argues that "Ohio Security was obligated to fund the defense of the Freedline Lawsuit" because "Albertson's is an additional insured under the Ohio Security Policy." [*Id.* at 18]; *see also* [*id.* at 20 ("Nautilus was required to fund a defense to the Freedline Lawsuit and so was Ohio Security.")]. While High Country also states that "High Country is entitled to judgment . . . that . . . Ohio Security was obligated to defend the Freedline Lawsuit," [*id.*], the Court declines to rely on this wording to find that High Country is attempting to assert claims on behalf of Albertson's. Accordingly, the Court concludes that High Country seeks reimbursement of its own costs spent on Albertson's defense, rather than asserting an entitlement to a direct defense on behalf of Albertson's, and is respectfully unpersuaded by Ohio Security's standing argument.[10]

---

[10] In any event, the Tenth Circuit has explained that

> [t]he law of standing is almost exclusively concerned with such public law questions as determinations of constitutionality and review of administrative or other governmental action. The term "standing," however, is used loosely in many contexts to denote the party with a right to bring a particular cause of action. This practice leads to much confusion when it is necessary to distinguish between "standing" in its most technical sense and the concept of real party in interest under Fed. R. Civ. P. 17(a).

*FDIC v. Bachman*, 894 F.2d 1233, 1235 (10th Cir. 1990) (internal citations and quotation marks omitted). Even if the Court did address Ohio Security's argument, the court believes it more appropriately framed as an argument under Rule 17, which provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). However, the "failure to timely raise a real-party-in-interest defense operates as a waiver" of that defense. *Bachman*, 894 F.2d at 1236. Ohio Security did not raise this defense in its Amended Answer, *see* [Doc. 39], or in its Motion for Summary Judgment. *See* [Doc. 48]. Rather, it raised the argument for the first time in its Response to the High Country Motion for Summary Judgment. The court finds that any such argument has been waived. *See Bachman*, 894 F.2d at 1236.

II.     **Insurance Coverage Disputes**

A.     **Colorado Contract Law Principles**

Because this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, *see* [Doc. 1 at ¶ 4], the Court applies the substantive law, including the choice of law principles, of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Colorado law provides that interpretation of an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). Here, the insured is a Colorado corporation with its principal place of business in Colorado, *see* [Doc. 1-5; Doc. 34 at ¶ 1], and each Party raises arguments under Colorado law. *See* [Doc. 40 at 4-5; Doc. 44 at 5-7; Doc. 48 at 2-3]. Accordingly, the Court applies Colorado law here. *See Ciber, Inc. v. ACE Am. Ins. Co.*, 261 F. Supp. 3d 1119, 1126 (D. Colo. 2017) (applying Colorado law where "[n]o party dispute[d] that . . . Colorado ha[d] the most significant relationship to the Policy because the Policy was entered into in Colorado and the insured's principal place of business is located in Greenwood Village, Colorado.").

In Colorado, "[a]n insurance policy's terms are construed according to principles of contract interpretation: a court seeks to give effect to the intent and reasonable expectations of the parties." *Auto-Owners Ins. Co. v. High Country Coatings, Inc*., 388 F. Supp. 3d 1328, 1333 (D. Colo. 2019). Under this approach, "words should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended." *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990); *see also Saiz v. Charter Oak Fire Ins. Co.*, 299 F. App'x 836, 839-40 (10th Cir. 2008).

"In a contract case, a motion for summary judgment allows for contract interpretation as a matter of law." *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d

1052, 1055 (D. Colo. 2013) (citing *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n*, 67 P.3d 12, 20 (Colo. 2003)).  The determination of whether the terms of the contract are ambiguous is a question of law.  *See id.*  If the terms of the contract are not ambiguous, the construction of the contract is also a question of law.  *See Devine v. Ladd Petroleum Corp.*, 743 F.2d 745, 748 (10th Cir. 1984).  "If, however, a contract is determined to be ambiguous, . . . the meaning of its terms are generally an issue of fact to be determined in the 'same manner' as other factual disputes." *Stroh Ranch*, 935 F. Supp. 2d at 1055 (citing *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005); *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996)).

Generally, in determining whether coverage exists under an insurance policy, "the initial burden is upon the insured to show that the loss sustained comes within the terms of the insurance policy; in other words, the insured has the burden to prove a material issue of fact exists concerning their entitlement to recovery under the insurance policy."  *Peerless Indem. Ins. Co. v. Colclasure*, No. 16-cv-00424-WJM-CBS, 2017 WL 633046, at *3 (D. Colo. Feb. 16, 2017).  If the insured meets that burden, the burden shifts to the insurer "to prove that the policy excludes the proximate cause of the loss."  *Id.*

### B.      The Duty to Defend

Whether an insurer owes an insured a duty to defend is a question of law.  *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007).  "[T]he duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the policy *actually* covers the alleged harm."  *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).  "[T]o determine whether a duty to defend exists," Colorado courts "must look no further than the four corners of the underlying complaint."  *Cyprus Amax*

*Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  "An insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy."  *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).  Thus, "[a]n insurer seeking to avoid its duty to defend an insured bears a heavy burden."  *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, No. 07-cv-00066-MSK-CBS, 2013 WL 1324600, at *4 (D. Colo. Mar. 31, 2013).  "An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might be held to indemnify the insured."  *Melssen v. Auto-Owners Ins. Co.*, 285 P.3d 328, 333 (Colo. App. 2012).  Indeed, the duty to defend is "designed to cast a broad net in favor of coverage" and is construed "toward affording the greatest possible protection to the insured."  *Cyprus*, 74 P.3d at 297.

In the instant matter, each Party argues that the coverage determination turns on, *inter alia*, whether the allegations in the Freedline complaint and the Bach-Farshchi demand amount to assertions of "bodily injury" or "property damage."  *See* [Doc. 40 at 5-11; Doc. 48 at 8-15; Doc. 48 at 10-14].  The Court finds determination of these issues dispositive of the Motions for Summary Judgment and limits its analysis accordingly.

### 1.    Bodily Injury

As set forth above, each Policy provides that the insurer will "pay those sums that [High Country] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  [Doc. 45-1 at 10; Doc. 45-2 at 47].  The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  [Doc. 45-1 at 22; Doc. 45-2 at 60].

In their Motions for Summary Judgment, the insurers each argue that the allegations in the *Freedline* complaint and the Bach-Farshchi demand do not amount to allegations of "bodily

injury" and thus did not trigger the insurers' duty to defend or indemnify.  *See* [Doc. 40 at 5; Doc. 48 at 11].   Specifically, Nautilus argues that the claims "revolve around [the *Freedline* claimants'] exposure to, and reliance upon, '[the retailers'] false, misleading and misbranded labels,'" as opposed to bodily injury. [Doc. 40 at 7].  As for Ohio Security, it contends that the "gravamen" of the *Freedline* claims is "that Albertson's has made, and continues to make, unlawful and misleading claims regarding the alcohol and sugar content on the labels of O Organics Kombucha, which are prohibited by law and render the products misbranded." [Doc. 48 at 11].  Ohio Security asserts that "[t]here is not a single allegation that the class [p]laintiff in the Freedline lawsuit suffered bodily injury, sickness, or disease or death as a result of the ingestion of the kombucha." [*Id.* at 11-12].

High Country counters that the *Freedline* complaint "contains multiple allegations that demonstrate that what underlies the claims is the putative class members' belief that, even if only at a cellular level, their bodies have been harmed by consuming a product that contained alcohol and/or sugar in levels that were unsafe and/or unhealthy for them." [Doc. 44 at 9]. [11]  High Country argues that damage to human cells may constitute "bodily injury" for purposes of the Policies, relying on extra-jurisdictional cases in support. [*Id.* at 11-12]. [12]

---

[11] High Country's arguments in its Responses are substantially similar to the arguments raised in its own Motion for Summary Judgment.  *Compare* [Doc. 44 at 8-13] *with* [Doc. 50 at 4-9] and [Doc. 61 at 5-9].  The same is true for the insurers.  *Compare, e.g.,* [Doc. 40 at 6-7] *with* [Doc. 54 at 9-11] and [Doc. 48 at 11-13] *with* [Doc. 59 at 9-10].  For purposes of clarity, the Court primarily cites to the Motions for Summary Judgment when referencing the Parties' duplicative arguments, but cites to the Parties' associated briefing where necessary.

[12] Because High Country argues that Claim Four is not ripe, it does not assert any substantive arguments related to whether the Bach-Farshchi demand includes claims for "bodily injury," either in response to the insurers' arguments concerning the Bach-Farshchi demand or in its own Motion for Summary Judgment.  *See* [Doc. 44; Doc. 50; Doc. 61].

High Country's argument concerns whether harm that occurs at the cellular level—from, for example, alcohol or sugar consumption—constitutes "bodily injury" as defined in the Policies. *See, e.g.*, [*id.* at 8 ("It is well known that alcohol damages human cells, parts of human cells, or certain functions of human cells"); *id.* at 9 ("[T]he substantial and harmful effects of sugar on the body cannot be overstated.")].   But the Court need not determine whether cellular damage constitutes "bodily injury" under the Policies because even if it does, there are no allegations in the *Freedline* complaint alleging any such cellular damage.   Stated another way, the *Freedline* complaint does not allege injury arising out of any physical harm, any actually suffered health hazard, or any "cellular damage"; rather, the *Freedline* complaint alleges injuries arising out of (1) the defendants' misrepresentations and omissions; (2) the plaintiffs' purchase of kombucha based on the misrepresentations or omissions; and (3) the plaintiffs' resulting economic loss.   *See, e.g.*, [Doc. 45-3 at ¶¶ 54, 66, 75, 80, 87, 94, 98].

At best, High Country directs the Court to allegations suggesting the existence of health risks generally associated with consumption of alcohol and/or sugar or the mislabeling of products. *See, e.g.*, [*id.* at ¶ 1 ("The alcoholic beverages are sold to unsuspecting children, pregnant women, persons suffering with alcohol dependence issues, and a host of other people for whom alcohol consumption may pose a grave and immediate safety risk."); *id.* at ¶ 49 ("[T]he lack of appropriate warning on the labels of O Organics Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age and without identification, is a serious health hazard."); *id.* at ¶ 63 ("Defendants' advertising of O Organics Kombucha as non-alcoholic . . . causes the products to pose a threat to public health, safety, and morality.")].   But the *Freedline* complaint does not allege that the named plaintiff or any putative class members *actually suffered* any adverse health effects as a result of consuming the kombucha.   *See generally* [*id.*].

This case is analogous to *Post Holdings, Inc. v. Liberty Mutual Fire Insurance Co.*, 498 F. Supp. 3d 1098 (E.D. Mo. 2020).  In *Post Holdings*, a cereal manufacturer sought insurance coverage for litigation arising out of the cereal manufacturer's alleged mislabeling of high-sugar cereals.  *Id.* at 1101-02.  The question before the court was whether the underlying litigation alleged a "bodily injury" as defined in the applicable insurance policy, which contained a definition nearly identical to the definition in the Policies here.  *Id.* at 1104-05.  The court concluded there were no such allegations; while the allegations set forth "a chance someone eating the sugary cereals may develop certain conditions as a result," the underlying plaintiffs had not alleged that they had "actually suffered any of the potential conditions."  *Id.* at 1105.  The court further concluded that "[t]he underlying descriptive allegations of the possible harms of sugary cereal recited by a plaintiff cannot be converted into possible, but not asserted, cause of action."  *Id.* Without allegations that the underlying plaintiffs actually experienced adverse effects from consuming the cereal, there was no duty to defend against the underlying lawsuit.  *Id.*; *see also Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 614-15 (7th Cir. 2010) (stating that "[t]he problem with [the insured's] argument is that, even if the underlying plaintiffs proved every factual allegation in the underlying complaints, the plaintiffs could not collect for bodily injury because the complaints do not allege any bodily injury occurred" because "[i]n the underlying cases, the plaintiffs' attorneys have limited their claims solely to economic damages that resulted from the plaintiffs purchasing a product from which they cannot receive a full benefit because they were falsely led to believe that it was safe.").

Similarly here, there are no allegations that Mr. Freedline or the putative class members actually suffered any adverse health effects from consuming the subject kombucha.  [Doc. 45-3]. High Country's asserted evidence concerning the mere fact that sugar or alcohol generally may

pose health risks to individuals does not change this Court's analysis. *See Nationwide Prop. & Cas. Ins. Co. v. Feryo Hearing Aid Serv., Inc.*, 895 F. Supp. 85, 88 (E.D. Pa. 1995) ("[T]his Court may only consider the allegations in the complaint in determining coverage under the policy. . . . [S]peculation about potential claims or possible evidence are not enough to withstand [the] motion for summary judgment."). And although High Country asserts that because consumption of alcohol may result in "tangible, actual, adverse health effects," the *Freedline* complaint "arguably – if not clearly – alleges that pregnant women, minors, and others particularly susceptible to the damage to cells caused by alcohol are members of the class and thus are people who sustained physical injury from drinking the kombucha," [Doc. 50 at 8], the Court notes that there are no allegations in the *Freedline* complaint alleging that Mr. Freedline or class members *actually consumed* the kombucha. *See generally* [Doc. 45-3]. At best, it asserts that "[t]he lack of appropriate warning and disclaimers [on the label is] a health hazard because the beverages are unwittingly consumed *by persons* struggling with alcohol addiction and those that cannot consume alcohol for medical reasons." [*Id.* at ¶ 49 (emphasis added)]. But the potential for health risks arising out of the fact that unnamed individuals may consume the kombucha does not amount to an allegation of actual consumption, and High Country's theory of relief is thus unpersuasive. The Court concludes that the *Freedline* complaint does not seek damages arising out of "bodily injury," and thus, the *Freedline* complaint did not trigger the duty to defend on this basis.

The Court reaches the same conclusion with respect to the Bach-Farshchi demand, which similarly fails to allege that Ms. Bach or Mr. Farshchi suffered any physical injury or harm and instead focuses on the alleged economic harm allegedly suffered by each individual. *See* [Doc. 41-6 at 2 ("Ms. Bach and Mr. Farshchi would not have purchased Trader Joe's kombucha had they known, and had [y]ou properly disclosed, that Trader Joe's kombucha is an alcoholic beverage.")].

In any event, High Country does not raise any substantive arguments on this issue as to the Bach-Farshchi demand, and it is not the Court's duty to raise arguments on behalf of a litigant.  *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015); *see also Peerless*, 2017 WL 633046, at *3 (the insured bears the burden to show that the loss sustained falls within the applicable insurance policy).  Accordingly, the Court concludes that the Bach-Farshchi demand did not trigger any duty to defend under the Policies based on allegations of "bodily injury."

### 2. Property Damage

In the alternative, High Country argues that the *Freedline* complaint triggered the insurers' duty to defend because it seeks damages for "property damage" as defined in the Policies.  *See* [Doc. 44 at 13].  The Policies define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured."  [Doc. 45-1 at 24; Doc. 45-2 at 62-63].

In its Motion, High Country focuses on the latter definition of "property damage."  [Doc. 44 at 14].  According to High Country,

> [t]wo possibilities exist for how persons could have suffered a loss that would give them standing to be a part of the Freedline Lawsuit class:  certain members purchased and drank the alcoholic and sugary kombucha and suffered physical harm, and/or certain members purchased but refused to drink the kombucha after discovering it potentially contained alcohol and unhealthy levels of sugar.

[Doc. 50 at 10].  High Country asserts that for those in the latter group, "there has been a loss of use of the kombucha – tangible property – that was not physically injured that could trigger coverage," [*id.*], such that those in the latter group suffered "property damage," and asserts that the *Freedline* complaint describes those in the latter group.  [Doc. 44 at 14]; *see also* [Doc. 61 at 11 ("[T]he potential property damage alleged here is the loss of use of the kombucha.")].  Specifically, High Country notes that the *Freedline* class members "state that they 'lost money or

property' as a result of Albertson['s] conduct and that one of the forms of compensation sought is restitution—that is, the return of the purchase price." [Doc. 44 at 14]. High Country concludes that, in sum, the *Freedline* complaint "arguably articulates a claim that Albertson['s] is liable to pay sums because of loss-of-use 'property damage.'" [*Id.*].

However, High Country does not direct the Court to any allegations in the *Freedline* complaint asserting that Mr. Freedline or other class members purchased the kombucha beverages but did not drink the beverages upon learning that the beverages were unsafe for consumption. *See generally* [*id.*]. The *Freedline* complaint alleges that Mr. Freedline "purchased numerous bottles of O Organics Kombucha based on [the defendants'] misleading and false advertising and labeling of the products." [Doc. 45-3 at ¶ 3]. It further asserts that Mr. Freedline "would not have purchased the products at the time had he known that they contained significant levels of alcohol and were considered alcoholic beverages" and "would have paid significantly less for the products had he known that the products mischaracterized the level of sugar and alcohol in the bottles." [*Id.* at ¶ 5]. Mr. Freedline alleges generally that he and the other class members "lost money or property as a result of [the defendant's conduct]" because they would not have purchased the kombucha absent the defendants' representations or omissions and paid a premium for the kombucha based on the defendants' misrepresentations and omissions. *See, e.g.*, [*id.* at ¶¶ 66, 75]. But the *Freedline* complaint does not allege that those who purchased the kombucha beverages declined to consume those beverages due to safety risks, so as to support High Country's theory that the *Freedline* complaint contains allegations of "property damage." *See generally* [*id.*].

"[T]here is a profound difference between broadly construing factual allegations in the insured's favor and asking the Court (or an insurer) to create allegations nowhere stated in a complaint." *RMHB Constr., Inc. v. Builders Ins. Grp.*, 348 F. Supp. 3d 1093, 1104 (D. Colo.

2018).  The Court respectfully concludes that High Country's argument asks the Court to "supply missing factual allegations, not to interpret them."  *Id.*  This Court's review is limited to the four corners of the *Freedline* complaint, *Cyprus*, 74 P.3d at 299, which does not contain factual allegations supporting High Country's theory.  The Court thus concludes that the *Freedline* complaint does not contain allegations of "property damage" that triggered the insurers' duty to defend.

With respect to the Bach-Farshchi demand, High Country does not direct the Court to any allegations or statements in the demand that would suggest that these claimants assert claims for "property damage."  *See generally* [Doc. 44; Doc. 50; Doc. 61]; *see also Davis*, 622 F. App'x at 759; *Peerless*, 2017 WL 633046, at *3.  The Court's independent review of the Bach-Farshchi demand confirms that the demand does not allege that Ms. Bach or Mr. Farshchi purchased kombucha beverages but declined to consume the beverages upon belief that the beverages were unsafe.  *See* [Doc. 41-6].  Accordingly, the Court cannot conclude that the Bach-Farshchi demand triggered the insurers' duty to defend based on claims of "property damage."

For all of these reasons, the Court concludes that High Country has not met its burden of demonstrating that either the *Freedline* complaint or the Bach-Farshchi demand asserted allegations or claims of "bodily injury" or "property damage" to trigger the duty to defend in this case.  *Peerless*, 2017 WL 633046, at *3.  Having reached this conclusion, the Court declines to address the Parties' remaining substantive arguments concerning Policy exclusions or the existence of an "occurrence."  *See, e.g.*, [Doc. 40 at 11, 14; Doc. 44 at 15, 16; Doc. 48 at 6, 16].

## C.     The Duty to Indemnify

"Under Colorado law, an insurer's duty to defend is broader than the duty to indemnify.  If there is no duty to defend, then there is no duty to indemnify."  *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 920-21 (10th Cir. 2008) (citing *Cyprus*, 74 P.3d at 299); *see also Constitution Assocs.*, 930 P.2d at 563-64 ("Where there is no duty to defend, it follows that there can be no duty to indemnify.").  Because Nautilus and Ohio Security did not owe High Country a duty to defend against the *Freedline* complaint or Bach-Farshchi demand, they similarly did not owe High Country any duty to indemnify with respect to those matters.  As a result, the Court concludes that the entry of summary judgment in favor of Defendants and against Plaintiff with respect to Claims Three and Four is appropriate.

## D.     Breach of Contract

Finally, the court briefly addresses Plaintiff's Claims One and Two:  breach of contract claims asserted against Nautilus and Ohio Security, respectively.  [Doc. 34 at 5-9].  High Country's breach of contract claims arise out of the insurers' alleged failures to provide coverage for the claims in the *Freedline* complaint.  [*Id.* at ¶¶ 27-28 ("Nautilus was obligated under one or more of the Nautilus Policies to provide a defense and coverage in connection with the claims in the [*Freedline*] Complaint. . . . Nautilus' refusal to provide a defense and coverage in connection with the claims in the [*Freedline*] Complaint constitutes a breach of contract."); *id.* at ¶¶ 35-36 ("[T]he Ohio Security Policy afforded coverage for the claims in the [*Freedline*] Complaint. . . .  Ohio Security's refusal to provide coverage for the claims in the [*Freedline*] Complaint constitutes a breach of the Ohio Security Policy, which is a contract of insurance.")].

Ohio Security argues in its Motion for Summary Judgment that "[b]ecause there is no coverage for the Freedline lawsuit and [Bach-Farshchi] demand, High Country has no claim

against Ohio Security for breach of contract." [Doc. 48]. High Country does not respond to this argument. *See* [Doc. 61]. Nautilus does not specifically address High Country's breach of contract claim, *see* [Doc. 40], but asserts generally that because there is no duty to defend or indemnify, "summary judgment properly enters in its favor on all claims against it." [*Id.* at 3-4].

"Colorado courts hold that where an insurer is not obligated to provide a defense or indemnification to an insured, the insurer could not have breached its contractual obligations." *Landmark Am. Ins. Co. v. VO Remarketing Corp.*, No. 13-cv-01386-WJM-KMT, 2014 WL 2673593, at *5 (D. Colo. June 13, 2014), *aff'd*, 619 F. App'x 705 (10th Cir. 2015); *see also Leprino v. Nationwide Prop. & Cas. Ins. Co.*, 89 P.3d 487, 492 (Colo. App. 2003) (where there was no coverage, there was no duty to defend or indemnify and thus no breach of contract). Because the Court has concluded that neither Nautilus nor Ohio Security owed High Country a duty to defend or indemnify, it follows that neither insurer could have breached the applicable insurance contract by failing to defend or indemnify. Accordingly, summary judgment in favor of Nautilus on Claim One and in favor of Ohio Security on Claim Two is appropriate.

For the reasons set forth in this Order, the insurers' Motions for Summary Judgment [Doc. 40; Doc. 48] are **GRANTED** and High Country's Motion for Summary Judgment [Doc. 44] is **DENIED**.

## CONCLUSION

It is hereby **ORDERED** that:

(1)    Defendant Nautilus Insurance Company's Motion for Summary Judgment [Doc. 40] is **GRANTED**;

(2)    Judgment is **ENTERED** in favor of Defendant Nautilus Insurance Company and against Plaintiff High Country Kombucha, Inc. on Claims One, Three, and Four;

(3)     Defendant Ohio Security Insurance Company's Motion for Summary Judgment [Doc. 48] is **GRANTED**;

(4)     Judgment is **ENTERED** in favor of Defendant Ohio Security Insurance Company and against Plaintiff High Country Kombucha, Inc. on Claims Two, Three, and Four;

(5)     Plaintiff's Motion for Summary Judgment Re Duty to Defendant [Doc. 44] is **DENIED**;

(6)     Defendant Nautilus Insurance Company and Ohio Security Insurance Company, as the prevailing Parties, are **AWARDED** costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and Local Rule 54.1;

(7)     A Final Judgment will be entered concurrently with this Order; and

(8)     The Clerk of Court is **DIRECTED** to close this case.


DATED:  September 9, 2022                    BY THE COURT:

                                             _____
                                             Nina Y. Wang
                                             United States District Judge